David Marshall Crisp
Reg. No. 23510-298
FCI Lompoc
Federal Correctional Institution
3600 Guard Road
Lompoc, CA 93436
Movant Appearing *Pro Se*





FILED

NOV 30 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:11-CR-0026 LJO |
|---|---|
| Plaintiff, | |
| v. | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT DAVID CRISP'S 28 U.S.C. § 2255 MOTION |
| DAVID MARSHALL CRISP, | |
| Movant. | |

COMES Defendant, DAVID MARSHALL CRISP ("Crisp"), appearing *pro se,* and replies as follows:

### PRELIMINARY STATEMENT

As a preliminary matter, Crisp respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### REPLY

The thirty-three (33) page Government's Opposition to Defendant David Crisp's 28 U.S.C. § 2255 Motion ("GO") is divided into four (4) main sections: (I) Introduction; (II) Statement of the Relevant Facts; (III) Legal Analysis; and (IV) Conclusion. See Doc. 592.[1] Crisp will reply to each section, their subsections and subparts sequentially as follows:

---

[1] "Doc" refers to the Docket Report in the United States District Court for the Eastern District of California, Fresno Division in Case No. 11-CR-0026 LJO, which is immediately followed by the Docket Entry number.

## I. Introduction

The first section of the GO is the Introduction. See Doc. 592 at 7. In this section, the government states that "defendant Crisp raises three meritless claims of ineffective assistance of counsel and one meritless claim that the Court erred at sentencing by applying a two-level enhancement to which Crisp had stipulated in his plea agreement." *Id.* Crisp takes exception to these erroneous conclusions and will refute these claims below.

Next, the government accurately states the four grounds raised by Crisp in his § 2255 Motion. *Id.* Crisp does not take exception to this part of this section. Finally, in this section of the GO, the government claims that:

> "Crisp has waived and procedurally defaulted these claims. There is also no factual or legal basis for Crisp's claims, and they are refuted by the record and Crisp's communications with his counsel. In support of this Opposition the government is filing a declaration from Crisp's prior counsel, Assistant Federal Defender Eric Kersten, along with the exhibits attached thereto." *Id.*

Crisp takes exception to this statement and will refute these claims below.

## II. Statement of Relevant Facts

This section of the GO is divided into six (6) subparts: (A) The Indictment; (B) Crisp Admitted in Interviews to Carrying Out the Fraud Scheme; (C) The Initial Plea Offer to Crisp; (D) Crisp's Guilty Plea in December 2013; (E) Crisp's Sentencing; and (F) After His Sentencing, Crisp Confirmed He Did Not Want a Notice of Appeal Filed. *Id.* at 1-10.

### A. The Indictment

This subsection of this section accurately states the charges alleged against Crisp in this case. It also makes reference to the "experienced" representation that Crisp was given in this case and states the counsel who represented him. *Id.* at 1. Kersten's declaration says that the Federal Defenders office assigned an investigator and a paralegal to this case. The investigator was Vincent Lee ("Lee"). Crisp met with Lee in 2010 when he was first indicted. Crisp inquired if Lee had ever worked on any mortgage fraud cases, or had purchased a home himself and been through the purchasing process. Lee never directly answered his question. In fact, there was only one period where they discussed mortgages that was purchased by Crisp over the phone. Lee's busy schedule only allowed him limited time with Crisp, which amounted to about three (3) one hour calls. During

these calls, they could only go over a few files. On the last call, Lee informed Crisp that he had to go to prepare for some other cases that he needed to catch up on and that he and his wife were expecting a child soon. He did not hear back from Lee until Kersten was appointed in Crisp's case and the plea offer was sent.

Crisp was released on bail in March of 2010. From that time until August of 2013, there was no preparation for trial or defense really ever happened by the Federal Defenders. As to the paralegals working on Crisp's case, he did not know who they were and he did not have any contact with them except for a few forwarded emails that came through on his sentencing memorandum. In over three (3) years of pretrial, Crisp had no personal contact with the paralegals.

(B) Crisp Admitted in Interviews to Carrying Out the Fraud Scheme

In this subsection of the GO, the government states that:

"In September 2007, during the search of his residence, Crisp voluntarily submitted to an extensive non-custodial FBI interview. Kersten Decl. ¶ 29 & Ex. E. In that interview . . . Crisp admitted that he pushed his employees to submit fraudulent loan applications to lenders, knew his employees were doing so, and recruited and paid many individuals to fraudulently act as straw buyers in real estate transactions . . ."

*Id.* at 2.

Contrary to the government's rendition of the interview that took place in September of 2007 during the search of his residence, Crisp disputes the facts regarding same.

With regard to Crisp's admission to his involvement in the fraud scheme, it is essential to note that the raid on Crisp's home occurred early in the morning. As such, Crisp was caught of guard as he was sleeping and never expected anything like the raid. The agents told Crisp that the interview was voluntary. However, they did not advise him that he could leave his home, or give him an option to leave as the agents surrounded him. In fact, they did not even allow him to put his pants on. As such, most of the interview was conduct in his underwear. Later, after the interview, Crisp requested that he be allowed to take a shower to get ready. When he took his shower, a federal agent watched him. As such, Crisp believed that he was in custody because he did not feel free to leave. However, during that interview, Crisp was not advised of his *Miranda* rights.

Contrary to the government's facts regarding that interview, Crisp never used language or words like scheme, straw buyers, fraudulent applications. The agents were throwing out these words

3

in the interview and attempting to get Crisp to agree with them. The agents repeatedly kept on insisting it was a scheme and a pattern. Contrary to the government claims regarding pushing his employees, Crisp stated that he pushed his employees and himself on customer service and getting things done fast. He never stated that he pushed them to commit fraud. Crisp did inform the agents about buying investments and flipping properties. The agents took this as fraud. Crisp informed the agents about the bank representatives that came to his office telling him that there was not any problem with him flipping properties. In fact, they were often in Crisp's office with his lenders putting the files together and being disclosed on the intentions of each loan that the banks wanted to loan on. The banks were instructing and couching them how to complete the file and making exceptions to their rules. Crisp wanted to buy investments and properties to resell, but did not have the intention to defraud the bank. It is essential to note that Crisp also informed the agents that the banks were the ones encouraging him to buy more and making exceptions to there rules in order to approve loans. The lenders and bank representatives indicated that the paper work was not scrutinized by them in order to get the loan approved. They had verbally approved the loan before it was submitted. Crisp disputed the government's claims regarding this interview each time it was brought up. It is essential to note that the interview was not video or audio recorded. As such, the agents prepared the FBI 302 Form Reports from their rough notes and recollection in their own words. As such, there is no verification available has to the facts of this interview except for the agent's recollection in their our words.

      C.  The Initial Plea Offer to Crisp

In this subpart of the GO, the government claims that it "extended an initial plea offer to Crisp on August 5, 2013 ("Initial Plea Offer"). Kersten Decl. ¶ 8 & Ex. A." See Doc. 592 at

Initial plea was emailed to Crisp's attorney, Eric Kersten ("Kersten") on August 5, 2013 from the U. S attorneys office. However, Kersten did not inform Crisp that he had his plea offer. Because Crisp's wife was emailed a contingent plea offer from her attorney, Crisp emailed Kersten on August 7, 2013, inquiring whether he had received a government plea offer for him. He replied back on August, 11, 2013. He said he wanted to talk to the government before getting back with him on it. Finally, on August 29, 2013, they met in Kersten's office. At that meeting, Kersten finally

4

tendered Crisp a copy of the government's plea offer to review. In Government Exhibit (A), the Declaration of Eric V. Kersten, he states that "a copy of the government's initial offer was provided to Crisp and we met at my office to discuss it in detail in late August or September 2013." Further, that "Crisp had read the offer before meeting with Kersten." See Doc. 592 at 3. This statement is wholly false. In fact, there was a 24-day lapse from August 5, 2013, the date that the government first sent the initial plea offer to Kersten, to August 29, 2013, when he was finally tendered same. At that meeting Kersten gave Crisp his first copy of the plea offer and the governments estimated loss amount worksheet to review. See Government - Exhibit (G). This was the first time that he had seen the plea offer or the government's exhibit.

According to the GO, the government states that:

"With the Initial Plea Offer, the government provided a spreadsheet listing the losses on over 120 loan transactions in the conspiracy, supporting a total estimated loss of $30,521,948. Kersten Decl. ¶ 36 & Ex. G. During the course of plea negotiations, Crisp asserted that some of the loans reflected in the loss amount should not be included in the loss calculation. Kersten Decl. ¶ 37. Mr. Kersten repeatedly asked Crisp during the plea negotiations to advise him which loans he questioned, but Crisp never did so. Id. Mr. Kersten notified Crisp that it was important to advise him if Crisp believed some of the included loans should be questioned, because once Crisp entered the plea agreement he would be locked into the agreed-upon loss amount. Id. Crisp never identified any questionable loans prior to entering his plea agreement. Id."

Id.

Contrary to the GO's above claim, when Crisp was shown a copy of the loss worksheet at Kersten's office on August 29th 2013, he informed him that he did not agree with the loss amount. He pointed out to Kersten that the Exhibit (G) worksheet, properties were duplicated and loss amounts were counted twice. However, Kersten, Lee or his paralegals failed to follow up on this information.

When the final plea was sent to Kersten on December 10, 2013, Crisp did not want to accept it because he did not have the intent to commit a crime and that even the loss amounts presented were wholly inaccurate. Kersten stated that the Judge was a fare judge and that it would be his discretion to do what he wanted to do. Kersten said that he would get a chance to explain what happen to the court at sentencing. Kersten explained it would be like a small trial that would give us a chance to argue our side of what really happened. Crisp inquired about the loss amounts in

5

Exhibit G, Kersten advised him that the loss amount would not make a difference in his sentencing.

When discussing the plea wavier Kersten said that it was standard that the government put the waiver in their pleas. He did not advise Crisp whether he could request to have it removed. Kersten led Crisp to believe that this is the way it was. That it was that same for his co-defendent Carl Cole. Kersten knew that Crisp wanted the ability to argue for less of a sentence than the government's offer. He'd said he was not sure about that and that he would have to contact them. Within 30 mins Kersten called back and said the government would agree to allow them to argue for less if they could allow an addition two level increase for money laundering. Kersten advised that Crisp that it would give him the chance to argue for less of a sentence. Crisp was advised by Kersten this was his best option. Kerstgen knew that Crisp wanted to show that he did not have any intent to commit fraud. As such, he really wanted to proceed to trial. However, Kersten advised him that he had no chance of winning a trial on intent. As such, he followed Kersten's advice.

D. Crisp's Guilty Plea in December 2013 and Change of Plea Hearing

In this subpart of the GO, the government first discusses the terms of the December 16, 2013. See Doc. 592 at 3. Crisp does not take exception to this rendition of the terms of his plea agreement with exception to the loss amounts which Crisp questioned Kersten and the appeal waiver provision.

With respect to the loss amount, Kersten informed Crisp that the loss amount would not matter at this point. When discussing the plea wavier, Kersten said that it was standard that the government puts this in their pleas. He did not advise Crisp that he could request that it be removed from the agreement. Kersten lead him to believe that this is the way it is. That it was that same for his co-defendant Carl Cole. Crisp informed Kersten know that he wanted to have the ability to argue for less of a sentence at sentencing. Kersten advised Crisp that he was not sure about that and that he would contact the government to find out their position. Within 30 minutes, Kersten called back and said the government would agree to allow him to argue for less of a sentence if they would not oppose a level increase for money laundering. Crisp did not understand this, however, it was his true and honest belief that it would allow him to argue for a lesser sentence at sentencing. As such, he wholly relied on his attorney's advice and agreed to the terms of the Plea Agreement including the money laundering enhancement. Further, Kersten advised Crisp that at the change of plea hearing

1 that he had to agree with the judge or that the judge would not accept the plea agreement.

2 With regard to the appeal waiver, Kersten claimed in his declaration that he "made sure that Crisp understood that that the appeal waiver meant that Crisp would not be able to appeal his conviction or sentence to a higher court, and ensured that Crisp had no confusion or misunderstanding . . ." *Id.* at 6.

6 Contrary to Kersten's declaration, Crisp did not understood the appeal waiver. He merely acquiesced to his advice to agree with and sign the agreement, or he would have to proceed to trial, would lose and he have a much harsher sentence imposed on him. Crisp did not feel like Kersten was prepared to go to trial because of his lack of preparation and pretrial investigation of his case. He believe that if he proceeded to trial that he would lose because of same. Therefore, because Crisp was a layman of the law and he was not trained or experienced in the criminal law system, he was forced to wholly rely on Kersten's advice. Following his advice, he signed the plea agreement agreeing with its terms and conditions, and as advised by Kersten merely agreed with the judge at the change of plea hearing colloquy. The Court accepted his plea and ordered the probation department to prepare a PSR and set a sentencing date.

### E. Crisp's Sentencing

17 In this subsection of the GO, the government gives a fair summation of the sentencing hearing. *Id.* at 9-10.

19 On the day of my sentencing, Kersten met Crisp prior to the hearing. He inquired about what he was allowed to say at the hearing. Kersten advised him not to say anything about being innocent or his lack of intent as the Court does not like those types of statements. It was Crisp's reasonable understanding that they would go over what really happened in his case so the judge could make his own judgment. However, that was not the case. He followed Kersten's advice and did not raise same. Crisp wanted Kersten to at least challenge the government's spreadsheet (Exhibit G). He believed that any reasonable attorney would have pointed multiple duplications and the inaccuracies on the spreadsheet. Even when Crisp informed Kersten about the duplicated property addresses, he failed to raise or challenge those figures. It was clear and obvious to Crisp that Kersten and his staff had ignored him and did not take the time to prepare for sentence. Kersten informed Crisp that "Even

1  though he had no intent to commit a crime, that in cases like his that unfortunately that banks pay
2  fines and people like him do time." Crisp felt like he had been run on the conveyer belt of the federal
3  judicial system and that his attorney had no intention of fighting for him on these matters. Kersten
4  did argue for a downward variance on behalf of Crisp, which the Court granted a reduction which
5  was below the advisory Guideline range.

          F.      <u>After His Sentencing, Crisp Confirmed He Did Not Want a Notice of Appeal Filed.</u>

7  In this subsection, the GO states that after his sentencing, "Crisp asked [Kersten] whether
8  there was anything that could be done to challenge his sentence. *Id.* ¶ 22. Mr. Kersten "reminded
9  Crisp that he had waived his right to appeal but advised him we could still file a notice of appeal if
10 he desired." *Id.* Mr. Kersten advised Crisp that the court of appeals would likely uphold his appeal
11 waiver, but that he would file the notice of appeal if Crisp wished. *Id.* Mr. Kersten then clarified that
12 Crisp did not want him to file a notice of appeal." See Doc. 592 at 10.

13       Conveniently, Kersten failed to mention in his declaration a second in person meeting at
14 Fresno County jail he had with Crisp after he was sentenced to discuss his options. Because Crisp
15 was confused after his sentencing, he requested this meeting. Contrary to his declaration, Kersten
16 failed advise Crisp that he had 14 days to file a notice of appeal. Kersten advised Crisp that nothing
17 could be done after he was sentenced. Kersten further advised Crisp that his appeal rights were
18 waived and that was it. At that meeting, Crisp inquired about his appeal rights and he informed
19 Kersten that he wanted to appeal his case to challenge Government Exhibit G. Kersten advised him
20 that the loss amounts would not change anything. It is clear and obvious that facts are in dispute
21 between the parties in this case. As such, Crisp respectfully requests that the Court conduct an
22 evidentiary hearing so that he can further prove his grounds, resolve facts in dispute between the
23 parties both in and out of the record, and expand an incomplete record.

24     **III.**    **Legal Analysis**

25       This section of the GO is divided into four (4) sections: (A) Crisp Has Waived and
26 Procedurally Defaulted His § 2255 Claims; (B) Crisp Has Failed to Establish Ineffective Assistance
27 of Counsel; (C) The Court Did Not Err in Applying the Stipulated Two-Level Enhancement for Ten
28 or More Victims; and (D) No Evidentiary Hearing Is Warranted.

    (A)  <u>Crisp Has Waived and Procedurally Defaulted His § 2255 Claims</u>

This subsection of the GO is divided into three (3) subparts: (1) Crisp's Plea Agreement and Guilty Plea Waived His § 2255 Claims; (2) Crisp's Claims Are Procedurally Defaulted; and (3) Crisp's Restitution Argument Cannot Be Brought in a § 2255 Motion. See Doc. 592 at 11-26.

    (1)  <u>Crisp's Plea Agreement and Guilty Plea Waived His § 2255 Claims</u>

In this subpart of the GO, the government opines that Crisp waived his right to file his § 2255 motion. *Id.* at 11-13.

Contrary to this opinion, it is hard to imagine that the government would make such an erroneous claim when the Ninth Circuit and the Attorney General's Office has made it clear that claims of ineffective assistance of counsel should not be waived. See *United States v. Castro-Verdugo*, 750 F.3d 1065 (9th Cir. 2014). See also, MEMORANDUM FOR ALL FEDERAL PROSECUTORS dated October 14, 2014, regarding Department Policy on Waivers of Claims of Ineffective Assistance of Counsel by James M. Cole, Deputy Attorney General. In this memorandum, Cole states in pertinent part:

> "Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve."

*Id.*

Based on the above, Crisp did not waive his claims of ineffective assistance of counsel.

    (2)  <u>Crisp's Claims Are Procedurally Defaulted</u>

In this subpart of the GO, the government claims that Crisp is procedurally barred from filing his § 2255 Motion because he did not raise these issues on direct appeal. *Id.* at 13-15.

In reply to this erroneous claim, Crisp states that first of all, his counsel provided ineffective assistance of counsel by not filing a notice of appeal on his behalf as he wanted him to do. Secondly, it is again hard to imagine that the government would make such an erroneous claim. It is well settled that claims of ineffective assistance of counsel are generally raised on § 2255 Motions. Crisp has made a credible, non-frivolous claim of cause necessary to overcome any procedural default.

9

1  See *United States v. Withers,* 638 F.3d 1055 (9th Cir. 2011).

          (3)    Crisp's Restitution Argument Cannot Be Brought in a § 2255 Motion

In this subpart of the GO, the government states that "Crisp's claim that his counsel provided ineffective assistance with respect to the restitution ordered at sentencing (*see* Doc. 565 at 6; Doc. 566 at 2-3) has no merit and is not the proper subject of a § 2255 motion." See Doc. 592 at 15.

Contrary to the government's claim, Crisp wanted to raise his restitution claim in a direct appeal, but because was Kersten was ineffective in not filing his notice of appeal, he was not afforded that opportunity to do so. As such, had Kersten filed a notice of appeal, Crisp would have challenged his restitution in his direct appeal. Accordingly, as couched under an ineffective assistance of appellate counsel claim, his restitution claim is properly raised in his § 2255 Motion.

    (B)    Crisp Has Failed to Establish Ineffective Assistance of Counsel

This subsection of the GO is divided into two (2) subparts: (1) Crisp Has Failed to Show His Counsel Was Ineffective; and (2) Crisp Has Failed to Establish any Prejudice. See Doc. 529 at 15-19.

          (1)    Crisp Has Failed to Show His Counsel Was Ineffective.

In this subpart of the GO, the government claims that Crisp cannot show deficient performance by Kersten on any of his claims of: (a) Alleged Failure to File Notice of Appeal; (b) Alleged Failure to Investigate, to Move to Suppress Evidence, to File Motion to Sever, to Analyze Mortgage Loss Amounts, and to Raise Other Unspecified Defenses; and (c) Alleged Failure to Adequately Challenge the Mortgage Loss & Restitution Amounts. *Id.*

With regard to Kersten's failure to file a Notice of Appeal, the government solely relies of the declaration of Kersten. The facts as stated by Kersten are disputed by Crisp. He has previously stated that he wanted to file a notice of appeal and he informed Kersten of same at their second meeting which occurred within the 14 day window of filing same. However, Kersten advised Crisp that he could not file a notice of appeal because he waived his right to do so in his plea agreement. Crisp still wanted to file an appeal, but Kersten convinced Crisp that he could not file one. As such, he relied on Kersten's advice until he did some research in the law library after being designated to his federal facility and found that Kersten's advice was wholly erroneous, but the window for filing same had passed.

With regard to Kersten's Failure to Investigate, to Move to Suppress Evidence, to File Motion to Sever, to Analyze Mortgage Loss Amounts, and to Raise Other Unspecified Defenses and challenge the mortgage loss & restitution amounts, the facts above and Crisp's original § 2255 Motion adequately brief these claims, and he adopts those arguments in whole by reference here.

(2) Crisp Has Failed to Establish any Prejudice.

The government claims in the GO that: (a) Crisp Has Failed to Establish Prejudice with Respect to the Lack of a Direct Appeal; (b) Crisp Has Failed to Establish any Prejudice with Respect to His Guilty Plea or Pre-Plea Matters; and (c) Crisp Has Failed to Establish any Prejudice at Sentencing. Crisp takes exception to all of these erroneous claims.

With regard to prejudice in Kersten's failure to file a notice of appeal, the Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. See *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327 (1969); *Peguero v. United States*, 526 U.S. 23, 28 (1999)). Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. The proper procedure when an out-of-time appeal is warranted is: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, as dictated by Federal Rule of Appellate Procedure 4(b)(l)(A)(I). Appointment of counsel will presumably also be warranted given Defendant's custodial status.

With regard to prejudice in the plea context, "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 130 S.Ct. 1473 1486 (2010). Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Soto-Lopez*, (No. 11-55244) (9th Cir. April

11

6, 2012). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *United States v. Blaylock*, 20 F.3d 1458 (9th Cir. 1994); *Lafler v. Cooper*, 132 S.Ct. 1376 1388 (2012). Crisp was never given the relevant circumstances or likely consequences if he proceeded to trial. Something that he felt he should do because he never had any intent to defraud anyone. Had Kersten properly informed Crisp of the relevant circumstances and likely consequences of proceeding to trial, there is a reasonable probability that he would have done so. As such, he was prejudiced by his attorneys push to only get him to plead guilty without being fulling informed so that he could make an informed decision on whether to plead guilty or proceed to trial.

With regard to prejudice at sentencing, had Kersten challenged the loss amounts on the government's spread sheet as Crisp repeatedly requested he do, there is a reasonable probability that his sentence would have been significantly less harsh. See *Glover v. United States*, 531 U.S. 198, 203 (2001) (Any amount of additional jail time is significant for purposes of showing prejudice).

(C) <u>The Court Did Not Err in Applying the Stipulated Two-Level Enhancement for Ten or More Victims</u>

In this subsection of the GO, the government claims that the Court did not err in applying the two level increase for ten or more victims. See Doc. 592 at 25.

Crisp takes exception to the government claim. This ground was adequately briefed in his original § 2255 Motion and he adopts that argument by reference here. See Doc. 566 at 20-22.

(D) <u>No Evidentiary Hearing Is Warranted</u>.

In this subsection of the GO, the government claims that an evidentiary hearing is not necessary in this case because "Crisp's claims are waived, are procedurally defaulted, do not support a claim for relief, or are, on their face, insufficient and conclusory allegations." See Doc. 592 at 26. In light of the conflicting accounts by Crisp and Kersten and the incomplete record on other relevant factors, this Court should have held an evidentiary hearing before ruling on the § 2255 application. An evidentiary hearing will allow the Court to develop a complete record, make appropriate fact findings, and grant relief in the first instance if evidence supports Crisp;'s contentions. If the district court decides that relief is merited, the form that relief takes shall be informed by the Supreme

Court's recent discussion of appropriate remedies in circumstances like these. In sum, an evidentiary hearing will confirm or dispel Crisp's allegations of ineffective assistance of counsel.

### IV. Conclusion

In the conclusion to the GO, the government states that Crisp's § 2255 Motion should be denied based on its Response brief. See Doc. 592 at 26.

Crisp takes exception to the government's conclusion. For the above and foregoing replies to the GO and his original arguments in his § 2255 Motion, Crisp states that his conviction and sentence should be vacate so that he may plea anew. In the alternative, Crisp should be granted an out of time appeal. As a final alternative, an evidentiary hearing should be held so that Crisp may further prove his meritorious grounds, resolve facts in dispute between the parties in and out of the record, an to expand an incomplete record.

Respectfully submitted,

David Marshall Crisp  11-25-2015
Appearing *Pro Se*

### IV. Certificate of Service

I hereby certify under the penalty of perjury pursuant to 28 U.S.C. § 1746 that on November 25, 2015, a true and correct copy of the above and foregoing Defendant's Reply to Government's Opposition to Defendant David Crisp's 28 U.S.C. § 2255 Motion and Extension of Time to File Same was placed in the mailbox at FCI Lompoc, postage prepaid, addressed to Mr. Robert E. Coyle, Clerk, U.S. District Court for the Eastern District of California, Fresno Division at 2500 Tulare Street, Room 1501, Fresno, California 93721 and to KIRK E. SHERRIFF and HENRY Z. CARBAJAL, III, Assistant United States Attorneys at U. S. Attorneys Office, 2500 Tulare Street, Suite 4401, Fresno, CA 93721.

David Marshall Crisp

13