# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:11-CR-00026-LJO** |
| **Plaintiff-Respondent,** | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Doc. 566)** |
| **v.** | |
| **DAVID CRISP,** | |
| **Defendant-Petitioner.** | |

## I. INTRODUCTION

David Crisp ("Petitioner"), a prisoner in federal custody, brings a pro se 28 U.S.C. § 2255 motion ("§ 2255 motion") to vacate, set aside, or correct his sentence. For the reasons discussed below, the Court DENIES Petitioner's motion.

## II. BACKGROUND OF THE CASE

On January 13, 2011, Petitioner, along with nine co-defendants, was indicted on charges of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy to launder money in violation of 18 U.S.C. § 1956(h). Indictment as to David Crisp, Doc. 1. In total, the indictment amounted to 56 violations. *Id.* On December 12, 2013, Petitioner signed a plea agreement with the United States ("the government"), wherein he agreed to plead guilty to Count One of the Indictment. Mem. of Plea Agreement ("Plea Agreement"), Doc. 278 at 3. Petitioner waived his right to trial as well as to appeal and other post-conviction remedies. *Id.* at 4.

Charges on the fifty-five other related counts were dismissed in consideration of this agreement. *Id.* The government agreed to recommend that the Petitioner's base offense level was seven, plus 34 levels associated with the size and sophistication of the criminal activities and his leadership role, but also agreed to recommend a two or three level reduction if Petitioner demonstrated acceptance of responsibility. *Id.* at 5, 8. The agreement describes that the maximum potential sentence Petitioner might receive is thirty years. *Id.* at 11.

In a Change of Plea Hearing on December 16, 2013, the Court asked Petitioner how he wished to plead to the following crimes:

> To execute a scheme and artifice to defraud mortgage lending companies and federally insured lending financial institutions, collectively referred to as "lenders," of money and property from such Lenders by means of materially false and fraudulent pretenses, representations and promises; and to cause the United States mail and commercial carriers to be used in execution of the scheme to defraud, in violation of Title 18 of the United States Code section 1341; and to cause signs and signals to be transmitted by means of wire and radio communications in interstate commerce in furtherance of the scheme to defraud, in violation of Title 18 United States Code section 1343; and to defraud financial institutions and to obtain monies, funds, assets , and other properties under the custody and control of a financial institution by means of material false and fraudulent pretenses, representations, and promises in violation of Title 18 United States Code section 1344, all in violation of Title 18 of the United States Code section 1349.

Transcript of Change of Plea Hearing ("Plea Change Hearing"), Doc. 297, 20. To this question, Petitioner responded, "Guilty, your Honor." *Id.*

At sentencing on March 31, 2014, the Court found the applicable offense level to be 38, with a Criminal History Category of "I" and a sentencing range of 235 to 293 months. Transcript of Sentencing Hearing ("Sentencing Hearing"), Doc. 541 at 4. The Court sentenced Petitioner to 211 months. *Id.* at 47.

On April 23, 2015, Petitioner filed the instant motion to "vacate, set aside and/or correct sentence, judgment conviction, plea & plea agreement pursuant to 28 U.S.C. § 2255." Habeas Motion,

Doc. 566. Petitioner claims that his attorneys were ineffective because they a refused to file an appeal, failed to investigate and argue certain matters, and failed to verify the government's loss calculation. *Id.* at 2-3. Petitioner also claims that the Court erred in sentencing him. *Id.* at 3.

Upon request by this Court, Doc. 573, the government filed an opposition. Government's Opp'n to Def.'s 28 U.S.C. § 2255 Motion ("Opposition"), Doc. 592. The government argues that the record refutes Petitioner's allegations and that most of Petitioner's claims are procedurally defective. *Id.* Petitioner replied on November 30, 2015. Reply to Government's Opp'n ("Reply"), Doc. 603.

### III. <u>STANDARD OF REVIEW</u>

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

An evidentiary hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). No hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, Section 2255 provides that a petitioner is "entitled to careful consideration and plenary processing of

(his claim,) including full opportunity for presentation of the relevant facts." *Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977).

## IV. <u>ANALYSIS</u>

**A.**   <u>**Procedural Issues**</u>

    **1.**   <u>**Waiver**</u>

The government argues that Petitioner waived his right to appeal and to file post-conviction proceedings, including relief under § 2255, in his Plea Agreement. Opposition at 11-13. A plea agreement is a contract and subject to contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). In a plea agreement, a Petitioner may waive his right to file a motion for relief under 28 U.S.C. § 2255 if done so expressly. *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The right to collaterally attack a judgment of conviction pursuant to § 2255 is statutory, and a knowing and voluntary waiver of a statutory right is enforceable; *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993); *see also United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) ("[I]t is not a due process violation for a Petitioner to waive, in an otherwise valid plea agreement, the statutory right of appeal."). Further, "[a]n unconditional guilty plea waives all non-jurisdictional defenses and cures all antecedent constitutional defects, allowing only an attack on the voluntary and intelligent character of the plea." *United States v. Brizan*, 709 F.3d 864, 866-67 (9th Cir. 2013). An appeal waiver may not be enforced "if the district court failed to comply with Federal Rule of Criminal Procedure 11, the court informed the Petitioner that she retained the right to appeal, the sentence did not comport with the terms of the plea agreement, or the sentence violated the law. *Id.* at 866 (citing *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007)).

Here, petitioner expressly waived both his right to appeal and his right to collaterally attack his

4

1    sentence pursuant to 28 U.S.C. § 2255. Plea Agreement at 4. The government argues that Crisp's first

2    ground for relief, that his attorney was ineffective in telling him that he could not file an appeal, was

3    waived by this agreement. Opposition at 12. Courts in the Ninth Circuit differ in opinion as to whether a

4    defendant can effectively waive the right to assert ineffective assistance of counsel issues unrelated to

5    the validity of the plea agreement. *See United States v. Barraza*, No. 2:08-CR-0414 LKK KJN, 2014

6    WL 3867423, at *4 (E.D. Cal. Aug. 6, 2014) (discussing intra-circuit split). This Court takes the position

7    that a defendant may waive such a claim. *Schneider v. United States*, No. 1:10-CR-00361-LJO, 2012

8    WL 5522703, at *4 (E.D. Cal. Nov. 14, 2012). However, the scope of the waiver is limited to the

9    express terms of the plea agreement. *Id.* For example, the waiver at issue in *Schneider* provided that

10   "[t]he defendant ... agrees not to contest her plea, conviction, restitution imposed or sentence in any

11   post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255 or §

12   2241." *Id.* Thus, the defendant's claim that she received ineffective assistance of counsel when counsel

13   ignored her request to file an appeal was not waived because it did not constitute a challenge to the plea,

14   conviction, restitution imposed, or sentence. *Id.* Therefore, it was beyond the scope of the waiver

15   provision. *Id.* Similar to the language at issue in *Schneider*, Petitioner's plea agreement limits his waiver

16   of 2255 claims to issues regarding his conviction, restitution imposed, forfeiture order and sentence.

17   Plea Agreement at 4. Accordingly, because his failure to appeal claim does not constitute a challenge to

18   the "plea, conviction, restitution imposed, or sentence," it was not waived by the terms of his agreement.

19        Petitioner also alleges that his attorneys were ineffective because they failed to investigate his

20   case properly and failed to adequately challenge the veracity of certain details related to his restitution,

21   and failed to file a motion to sever. Habeas Motion at 11-20. While Petitioner does not explicitly claim

22   that his guilty plea was involuntary, he does allege facts that suggest his plea was not "knowing."

23   Habeas Motion at 12 (describing failure to investigate was "a severe blow to any defense Crisp could

24

25                                                5

26

have mustered especially considering that he was indigent by the time he was indicted and even more broke by the time that he was to have to decide whether to plead guilty or to go to trial."). Because Petitioner is pro se, the Court construes his pleadings liberally and will treat his claims as alleging that ineffective assistance of counsel critically undermined the knowing and voluntary nature of his plea. Such claims cannot be waived.

Petitioner also claims that the Court erred by applying a two-level enhancement to his sentence on the basis that there were more than ten victims. Habeas Motion at 20. The Court reads this argument as a dispute as to the factual basis on which his sentence was predicated. This argument does not dispute that the sentence comports with the terms of the plea agreement, nor does it provide a basis for finding that the sentence violated the law. *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986) (finding that an "illegal" sentence includes "a sentence which is not authorized by the judgment of conviction . . . ," or "in excess of the permissible statutory penalty for the crime, or in violation of the constitution . . . "). Therefore, Petitioner's waiver of his right to challenge his sentence is enforceable. *Brizan*, 709 F.3d at 866.[1]

## 2. **Procedural Default**

The government also argues that Petitioner's claims are procedurally deficient because he is raising them for the first time in a 2255 motion, rather than on direct appeal. Opposition at 12-14. Petitioner acknowledges that he never filed a direct appeal in this case. Habeas Motion at 17. It is well settled that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotations omitted). "Habeas review is an extraordinary remedy and will not be allowed to do service

---

[1] This waiver would not be valid if the Court found that Petitioner did not enter into the Plea Agreement knowingly and voluntarily. As is discussed in more detail below, the Court finds that his attorneys' performance did not undermine the integrity of his plea. Thus, the waiver is valid.

for an appeal." *Id.* This rule, however, "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, there are judicially created exceptions to it.

One such exception allows a criminal defendant to bring ineffective assistance of counsel claims under § 2255. *Massaro*, 538 U.S. 500 at 506 ("Subjecting ineffective-assistance claims to the usual cause-and-prejudice rule also would create perverse incentives for counsel on direct appeal."); *United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007) ("Of course, as *Bousley* recognized, the cause and prejudice requirement does not apply to claims that 'could not be presented without further factual development.' Similar reasoning led the Supreme Court recently to exclude all ineffective assistance of counsel claims from the cause and prejudice requirement.") (internal citations omitted). Petitioner's ineffective assistance claims fall into this category and will therefore be considered on the merits. Petitioner's claim challenging his sentence does not fall into this category or meet the requirements for any other recognized exception. Therefore, this claim is procedurally deficient in addition to having been waived.

### 3. Evidentiary Hearing

Petitioner requested an evidentiary hearing. Habeas Motion at 23. The Court finds that an evidentiary hearing is unnecessary. Both sides presented testimonial evidence as to all relevant facts. In conjunction with the record, this evidence is sufficient to allow the Court to make credibility determinations and findings of fact.

### B. Ineffective Assistance of Counsel Claims

### 1. Legal Background

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v.*

*Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are analyzed under

the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984); *Ross v.*

*Stewart*, 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland,* the Supreme Court held that there are

two components to an ineffective assistance of counsel claim, "deficient performance" and "prejudice."

466 U.S. at 694. Establishing "deficient performance" requires the movant to show that counsel made

errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*

at 687. "Deficient performance" means representation that "fell below an objective standard of

reasonableness." *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland,* 466 U.S. at

688). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,*

466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome

of the proceeding.'" *Harrington v. Richter,* 562 U.S. 86 (2011) (quoting *Strickland*, 466 U.S. at 693). A

court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697.

"[T]he two-part *Strickland* test applies to challenges to guilty pleas based on ineffective

assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). "Where . . . a Petitioner is represented

by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of

the plea depends on whether counsel's advice 'was within the range of competence demanded of

attorneys in criminal cases.'" *United States v. Lopez*, 182 F.3d 929 (9th Cir. 1999) (quoting *McMann,*

397 U.S. at 771). "The second, or 'prejudice,' requirement, on the other hand, focuses on whether

counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474

U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." *Hill,* 474 U.S. at 59.

### 2.    Alleged Failure to Appeal Issues

Petitioner's first claim is that his attorney, Eric Kersten, was ineffective because he because he allegedly told Petitioner that he "could not file a direct appeal." Habeas Motion at 8. As the government recognized, where an attorney fails to comply with his client's instruction to file an appeal, it is ineffective assistance of counsel. *United States v. Lamere*, 333 F. App'x 336, 337 (9th Cir. 2009) ("When an attorney fails to follow a client's instructions to file a notice of appeal, there is both deficient performance and prejudice."). "This is true even if the defendant waived the right to appeal, does not have a non-frivolous ground for a direct appeal, and the appellant may spend more time in prison than she would if she had not appealed." *Id.*

The government argues that Petitioner did not actually instruct his attorney to file an appeal. Opposition at 17. In support of this argument, the government submits Kersten's testimony in the form of a declaration. Decl. of Eric Kersten ("Kersten Decl."), Doc. 592-1. Kersten states that he met with Petitioner on April 2, 2014, a few days after his sentencing hearing *Id.* ¶ 21. At this meeting, Petitioner asked about his prospects on appeal. *Id.* ¶ 22. Kersten stated that he advised Petitioner that he had expressly waived his appellate rights, but that "we could still file a notice of appeal if he desired." *Id.* He went on to explain that he asked for verbal confirmation that Petitioner did not want to appeal. *Id.* ¶ 23. It was only several months later that Petitioner informed Kersten that he changed his mind and wanted to file an appeal. *Id.* ¶ 25. At this point the appeals deadline had passed, and Kersten advised Petitioner to file for relief under section 2255. *Id.*

Petitioner disputes Kersten's version of the events. Reply at 8. He submits his own declaration stating that he "asked [Kersten] about any kind of appeal that I could file in regards to my case and he stated that I could not appeal. I asked him about appealing the incorrect loss amounts and he said no to

that as well." Decl. of David Crisp ("Crisp Decl."), Doc. 566 at Ct. R. 28 ¶ 14. Petitioner also submits

the testimony of his friend Ty Stewart. Decl. of Ty Stewart ("Stewart Decl."), Doc. 566 at Ct. R. 31.

Stewart states that he visited Petitioner in jail after Petitioner had met with Kersten. *Id.* ¶ 1. At this time,

Petitioner told Stewart that Kersten had advised him that "he could not appeal." *Id.* ¶ 3.[2]

After careful consideration of the testimony, this Court concludes that there is no compelling

evidence that Kersten deliberately failed to comply with a direct order to file an appeal or that he

prevented Petitioner from filing one on his own. Kersten's sworn testimony is that, at the April 2, 2014

meeting he clearly asked Petitioner whether he wanted him to file an appeal- and was told that the

answer was "no." Kersten Decl. ¶¶ 22-24. He also testifies that he was "fully aware of [his] duty to file a

notice of appeal on Crisp's behalf if he asked [him] to do so" and that he "never told him that he could

not file a notice of appeal." *Id.* ¶ 24. Kersten reports that he reminded Petitioner that "he had waived his

right to appeal" and advised him that he believed that the Ninth Circuit would uphold the waiver. *Id.* ¶

22. In contrast, Petitioner's testimony is more ambiguous. In his Declaration, he states that Kersten told

him he "could not file an appeal." Crisp Decl. ¶ 14. Similarly, in his Reply he stated that Kersten

advised Crisp that "nothing could be done after he was sentenced" and that "his appeal rights were

waived." Reply at 8. While Petitioner reports that "he informed Kersten that he wanted to appeal his

case," he does not go so far as to say that Kersten refused to do so. *Id.* Rather, he states that Kersten

advised against it. *Id.* This is consistent with Stewart's testimony reflecting that Petitioner perceived that

he was not able to file an appeal. Stewart Decl. ¶ 3.  Based on these facts, the Court finds Kersten's

testimony credible. Petitioner may have *wanted* to file an appeal and may have had *the impression* after

the April 2, 2014 meeting an appeal was not feasible. Such feelings, however, did not add up to Kersten

defying an order to file.

---

[2] Since this Court will use Stewart's testimony for the purpose of evaluating Petitioner's impression of what he was told by Kersten (as opposed to evaluating whether Kersten made such a statement), it is not precluded by the rule against hearsay.

Petitioner also asserts that at the April 2, 2014 meeting, Kersten failed to advise him of the fourteen-day deadline for filing an appeal. Reply at 8. While Kersten's testimony is silent on this issue, that fact is of limited significance given that this issue was only raised after his declaration was filed. Even if counsel did not inform Petitioner of the appeals deadline, Petitioner has not shown that such a failure meant that his performance "fell below an objective standard of reasonableness." *Stanley,* 633 F.3d at 862. An attorney has a duty to consult with his client regarding appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). The Supreme Court defines the term "consult," as "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. There is no specific requirement to inform defendants as to filing deadlines or any other particulars so long as counsel complies with these objectives. Because there is no evidence that Kersten failed to inform him "about the advantages and disadvantages of taking an appeal" or "to make a reasonable effort to discover [his] wishes," the Court finds that Kersten's performance was not constitutionally deficient.

Petitioner has also not shown a reasonable probability that, but for counsel's allegedly deficient performance, an appeal would have been timely filed. According to Kersten, Petitioner decided that he wanted to file an appeal in June of 2014, several months after the deadline had passed. Kersten Decl. ¶ 25.  This is consistent with Petitioner's testimony that it wasn't until after his arrival at the federal penitentiary that he was "informed by another prisoner in the legal department that I should have filed the appeal 14 days after sentencing." Crisp Decl. ¶ 15. As discussed above, the Court has found that Petitioner expressed, at most, mixed sentiments as to whether he wanted to file an appeal at the April 2, 2014 meeting. Further, Petitioner waived all his appellate rights in his plea agreement and his attorney

11

1   had advised him that an appeal was unlikely to be successful for this reason. Finally, Petitioner fails to

2   allege that but for Kersten's failure to inform him of the deadlines, he would filed an appeal at that time.

3   Reply at 10 (noting that Petitioner relied on Kersten's advice not file an appeal "until he did some

4   research in the law library after being designated to his federal facility . . ."). Therefore, Kersten's

5   performance did not prejudice the outcome of the case. *See United States v. Baker*, No. CIV.A. 10-2184-

6   KHV, 2011 WL 124512, at *7 (D. Kan. Jan. 14, 2011) ("Even if counsel was deficient in not consulting

7   defendant about a possible appeal, defendant has not shown a reasonable probability that but for

8   counsel's deficient performance, an appeal would have been filed.").

9         Petitioner also asserts that Kersten failed to "to thoroughly explain to Crisp what he was giving

10   up by pleading guilty and by waiving the right to direct appeal or any collateral review." Habeas Motion

11   at 9. This argument is unpersuasive for many reasons. First, Petitioner stated in open court that he had

12   reviewed the terms of his plea agreement and gone over it with his lawyer, and that he had no more

13   questions on it. Plea Change Hearing at 15. When asked by the Court if he understood that he was

14   waiving his right to appeal, he responded "Yes, your Honor." *Id.* at 16. The Court also asked Petitioner

15   to confirm that he understood that by pleading guilty he was waiving his trial rights, and he responded

16   "Correct, your Honor." *Id.* at 17. Petitioner confirmed that he was not forced and that no one threatened

17   him to get him to change his plea. *Id*. There is a "strong presumption" of truthfulness afforded to

18   "solemn declarations made in open court." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986).

19   Additionally, Kersten testified that he explained the consequences of the appeal waiver and that

20   Petitioner did not ask for the language removed from the plea agreement. Kersten Decl. ¶ 12. Kersten

21   stated that he reviewed the terms of the waiver prior to the plea change hearing and that Petitioner

22   appeared to understand it and did not object to it. *Id.* ¶ 18; *see also id.* ¶ 19 ("At no time during the

23   change of plea proceedings did David Crisp indicate that he was reluctant or surprised to be waiving his

24

25                                                         12

26

right to appeal."). Finally, Petitioner's own declaration is silent on this issue. In the face of his own statements in open court, and his attorney's sworn testimony, the fact that his own declaration does not address his supposed failure to understand the waiver of his appellate rights is telling. While he does assert in his reply that he "did not understood [sic] the appeal waiver," this lone statement is unavailing.

For the reasons discussed above, this Court concludes that Petitioner was not denied the effective assistance of counsel with respect to the exercise of his appellate rights. The Court DENIES Petitioner's motion for habeas relief on this basis.

### 3.   Alleged Failure to Investigate/ Failure to Challenge

Petitioner alleges that his attorneys were ineffective because they failed to investigate whether the mortgages at issue in the indictment were in default or defective because of his actions. Habeas Motion at 12-14. Petitioner argues that his lawyers should have investigated the veracity and dollar value of the mortgages at issue and asked for a "full bill of particulars on each mortgage." *Id.* at 15. In a similar vein he argues that his attorney was deficient for "failing to challenge the veracity and amount owed on each mortgage, as well as whether the foreclosure amount or other criteria had [sic] was used in the methodology of determining the proceeds leading the Court to sentence Crisp and determine restitution." *Id.* at 17.

In guilty plea cases, when the error of counsel is the failure to investigate, the prejudice inquiry depends on the "likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.* "*Strickland* counsels that attorneys have a 'duty to make reasonable investigations' regarding whether admissible evidence exists. *Stenson v. Lambert*, 504 F.3d 873, 889 (9th Cir. 2007) (quoting 466 U.S. at 691). In evaluating attorneys' judgments as to whether to pursue evidence, courts must consider "whether the

13

known evidence would lead a reasonable attorney to investigate further." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). The Ninth Circuit requires courts to apply a "heavy measure of deference to an attorney's judgments as to whether additional evidence may be adduced by further investigation." *Id.* Therefore, "if the decision not to investigate beyond a certain point is reasonable, then the failure to do so cannot constitute ineffective assistance of counsel." *Id.*

Petitioner's belief that the alleged failures of his legal counsel cost him "numerous additional months in prison," Habeas Motion at 19, is based entirely on speculation. Thus it does not warrant relief under section 2255. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). As the government points out, Petitioner does not point to the existence of any evidence that would have undermined the case against him. Opposition at 17. Nor does Petitioner provide any basis for this Court to conclude that there was a reasonable likelihood that further investigation would have turned up such evidence. Kersten describes that the government had built a substantial case against him. Kersten Decl. ¶ 29. First, Petitioner participated in a non-custodial FBI interview on September 12, 2007 where he admitted that he knew his employees were submitting fraudulent loan applications, that he encouraged them to do so, and that he recruited and encouraged others to fraudulently act as straw buyers in real estate transactions that benefitted him. Kersten Decl. ¶ 29; Ex. E. He made additional admissions during interviews on June 2 and September 3, 2010. *Id.* ¶ 31.  Petitioner does not dispute the substance of these admissions. *Id.* ¶ 29. Further, his admissions were corroborated by "a wealth of documentary evidence." *Id.* ¶ 32.  Kersten testifies that Petitioner's defense team originally believed a forensic accountant might be needed, "but that belief faded as we reviewed the discovery." *Id.* ¶ 33. He testified that, in the end, he "felt certain a forensic accounting would not cut the loss amount from more than $28,000,000 to $20,000,000 or less, which would have been necessary to reduce Crisp's sentencing guideline range." *Id.* When Kersten

asked Petitioner to advise him if the government attributed any of the loans to him in error, Petitioner did not respond with any information or leads that would have allowed him to challenge the loans. *Id.* ¶ 37. Critically, he still does not point to the existence of such facts.  While he claims that the government used individual mortgages that had "nothing to do with [him] and with inflated costs," Crisp Decl. ¶ 5, he does not identify any example of this occurring. Thus, there is no reason to believe that further investigation would have led "to discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59.

The crux of Petitioner's argument is that the government "point[s] the blame at the lower level broker as the culprit," when he is just part of a larger criminal enterprise. Habeas Motion at 14. Petitioner faults his attorneys for having "no stomach for any of this as a defense." *Id.* This Court finds that such advice was far from deficient. As the Court explained at sentencing, "but they did too" is not a viable defense to criminal allegations.  *See* Sentencing Hearing at 34-36.

At his plea change hearing, the Court advised Petitioner that he faced up to 360 months of prison time. Plea Change Hearing at 29. His attorney negotiated a deal under which the government agreed to recommend an offense level of 41, with a three level reduction for acceptance of responsibility. Plea Agreement at 8-9. Ultimately, he was sentenced to 211 months. Sentencing Hearing at 47. Had Petitioner rejected this offer and been convicted he would not have been eligible for the three-level reduction of responsibility, and would have faced a guideline range of 324 to 405 months. 2013 Sentencing Table. Moreover, he would have faced exposure to the fifty-five additional counts for which he was indicted, but were dismissed under the terms of his plea. Plea Agreement at 11. Thus, while Petitioner may not be happy with the terms of the Plea Agreement or his sentence, there is no indication that leads the Court to believe that but for his attorney's alleged errors, he would have gone to trial and received a more favorable outcome. *See United States v. Astorga*, 457 F. App'x 698, 700 (9th Cir. 2011)


(finding no prejudice where defendant pled guilty and received sentence of 70 months, but faced 120 months if case went to trial). Therefore, the Court DENIES Petitioner's motion for relief due to his attorney's alleged failure to investigate and failure to challenge.

### 4.    Alleged Failure to Suppress Evidence

Petitioner argues that his attorneys were ineffective for "failing to suppress evidence." Habeas Motion at 2, 11. It is unclear what evidence he believes should have been suppressed and Petitioner does not claim that any evidence was obtained in violation of his constitutional rights. In contrast, Kersten testified that most evidence in the case "resulted from witness interviews, or was seized pursuant to valid search warrants." Kersten Decl. ¶ 28. Kersten also testifies that he considered moving to suppress statements made in the 2010 FBI interviews, but decided not to because he was "concerned the Court might disbelieved [sic] Crisp's testimony, potentially exposing him to an obstruction enhancement at sentencing or diminishing his credibility at sentencing." *Id.* ¶ 32. He goes on to explain that there would be very little to gain if he succeeded on such a motion because the information was corroborated elsewhere in the record. *Id.* Petitioner does not challenge this assessment in his reply.  Therefore, the Court DENIES Petitioner's motion for relief due to his attorney's alleged failure to suppress evidence.

### 5.    Failure to File Motion to Sever

Petitioner also alleges that each of the co-defendants should have been tried individually. Habeas Motion at 16. In order for Petitioner to succeed on this claim must show that he likely would have prevailed on a motion to sever *and* that, having prevailed, there is a reasonable probability that he would not have been convicted or plead guilty. *Thomas v. Varner,* 428 F.3d 491, 502 (3d Cir. 2005) ("Although *Strickland* does not set a high bar with respect to the prejudice inquiry, [defendant] must show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted."); *see also Belmontes v. Brown,* 414 F.3d

1094, 1121 (9th Cir. 2005) *rev'd on other grounds*, 549 U.S. 7 (2006) ("To satisfy *Strickland's* prejudice prong in a Fourth Amendment context, [defendant] must demonstrate a reasonable probability that a motion to suppress would have succeeded and that the suppression of the warrant would have led to a different out-come at the trial.").

Rule 14(a) of the Federal Rules of Criminal Procedure provides, "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." "To succeed on a motion to sever, a defendant must carry the "heavy burden in demonstrating that his joinder with the other defendant[s] was so manifestly prejudicial that it outweighed the dominant concern with judicial economy." *United States v. Moreno*, 618 F. App'x 308, 310 (9th Cir. 2015) (quoting *United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir. 1987)). "Co-defendants jointly charged are, prima facie, to be jointly tried." *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991) (internal quotations omitted). Kersten testified that "[a] motion to sever was not filed because valid grounds did not exist." Kersten Decl. ¶ 27. He explains that all other defendants were either his employees or family members of his or his partner. *Id.* Moreover, by the time Crisp entered his plea agreement, the only remaining co-defendant who had not plead was known to be his "right hand person." *Id.* Petitioner does not provide any basis from which this Court might conclude that his case should have been severed from the other defendants. Rather, he only argues that severance would have been a benefit to him. Habeas Motion at 16 ("If the court would allow such then each defendant would then be able to require the government to provide strict proof as to which particular mortgage had been made fraudulent by a specific individual."). This is an inadequate basis for relief. Thus, the Court DENIES Petitioner's motion on this basis.

\\

17

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A Petitioner cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a Petitioner must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. The Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court further finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack*, 529 U.S. at 483. Accordingly, the Court declines to issue a certificate of appealability.

## VI. <u>CONCLUSION AND ORDER</u>

For the reason discussed above, this Court DENIES Petitioner's § 2255 motion to vacate, set aside, or correct sentence. The Court also DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated:   **January 19, 2016**                    **/s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE

18