1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID MARSHALL CRISP,<br><br>Defendant. | No.  1:11-cr-00026-NONE<br><br><br>ORDER DENYING DEFENDANT'S<br>MOTION FOR COMPASSIONATE<br>RELEASE<br><br>(Doc. No. 664) |

Pending before the court is defendant David Marshall Crisp's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") pandemic.  (Doc. No. 664.)  For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On January 13, 2011, defendant Crisp was charged by way of indictment with one count of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); 33 counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2–34); 10 counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 35–44); 11 counts of bank fraud and aiding and abetting bank fraud in violation of 18 U.S.C. § 1344 and 2 (Counts 45–55); and one count of

1

1    conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count 56).  (Doc. No. 1.)  The

2    government's case against defendant focused on his leadership role in a massive scheme to

3    defraud various mortgage lenders through the use of straw buyers in order to artificially inflate

4    the prices of homes so that the true owners of the properties could fraudulently extract the

5    purported increased equity from each home sale.  (Doc. No. 348 (presentence report, "PSR") at

6    5–8.)  Defendant Crisp and his co-defendant Carlyle Lee Cole owned and operated Crisp, Cole

7    Associates (aka Crisp & Cole Real Estate ("CCRE")), a real estate brokerage firm, and Tower

8    Lending, an affiliated mortgage brokerage.  (*Id.* at 6.)  Crisp, Cole, and, to a lesser degree, co-

9    defendant Farmer were found to have managed the conspiracy to defraud the lenders and it was

10   they who directed their many co-defendants, including family members, in carrying out the

11   massive fraud.  (*Id.*)  The mortgage lenders suffered losses totaling nearly $30 million as a result

12   of defendants' fraudulent scheme.  (*Id.* at 7.)

13          On December 16, 2013, defendant Crisp entered a guilty plea to Count 1 (conspiracy to

14   commit mail fraud, wire fraud, and bank fraud).  (Doc. Nos. 278, 284, 297.)  Pursuant to his plea

15   agreement, defendant Crisp agreed not to seek any downward departure from the advisory U.S.

16   Sentencing Guidelines (USSG) with respect to his offense level or his criminal history category

17   and retained the right only to argue at sentencing for a downward variance from the guidelines

18   based upon consideration of the factors set forth at 18 U.S.C. § 3553(a) to a sentence of not less

19   than 10 years in prison.  (Doc. No. 278 at 4–5.)  Following his guilty plea, it was determined that

20   defendant Crisp's adjusted offense level was 38, and his criminal history placed him in category I,

21   according to the USSG; this resulted in an advisory sentencing guideline range calling for a term

22   of imprisonment of between 235 and 293 months.  (*Id.* at 4.)  The U.S. Probation Office

23   recommended a sentence of 235 months.  (*Id.*)  On March 31, 2014, the court sentenced

24   defendant to 211 months in prison with a 60-month term of supervised release to follow.[1]  (Doc.

25   No. 433.)  In addition, the court ordered defendant Crisp to pay the mandatory $100 special

26   _____

27   [1]  The sentencing judge imposed a below-guideline sentence to match the 211-month sentence
     imposed on co-defendant Carlyle Lee Cole in order to avoid unwarranted sentencing disparity,
     since both defendants played substantially similar roles in the commission of the fraud.  (*See* Doc.

28   No. 541 at 47.)

1    assessment fee and $28,210,420.48 in restitution.  (*Id.*)  Pursuant to the parties' plea agreement,

2    the government dismissed the remaining counts against defendant Crisp at sentencing.

3           Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") United

4    States Penitentiary in Atwater, California ("USP Atwater").  *Find an inmate*, FEDERAL BUREAU

5    OF PRISONS, https://www.bop.gov/inmateloc/ (last visited August 10, 2021.)  On September 14,

6    2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C.

7    § 3582(c)(1)(A).  (Doc. No. 664.) [2]  On October 16, 2020, the government filed its opposition to

8    the motion, and on October 30, 2020, defendant filed his reply thereto.  (Doc. Nos. 666, 671.)

9                                    **LEGAL STANDARD**

10          A court generally "may not modify a term of imprisonment once it has been imposed."

11   18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

12   of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

13   not be modified by a district court except in limited circumstances.").  Those limited

14   circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

15   452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

16   ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. §

17   3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own

18   motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this

19   regard, the FSA specifically provides that a court may

20                    upon motion of the defendant after the defendant has fully exhausted
                     all administrative rights to appeal a failure of the [BOP] to bring a
21

22   /////

23   /////

24   /////

---

25   [2]  On April 13, 2015, defendant moved to vacate, set aside, or correct his sentence pursuant to 18
     U.S.C. § 2255, in large part based upon his claims that he had received ineffective assistance of
26   counsel.  (Doc. No. 565 at 6.)  On January 20, 2016, defendant's motion was denied with the
     court declining to issue a certificate of appealability.  (Doc. No. 608.)  Defendant appealed that
27   order denying his § 2255 motion and the Ninth Circuit denied his request for a certificate of
     appealability on October 5, 2016.  (Doc. No. 629.)
28

motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)     extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

---

[3]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[4]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported

1    The policy statement with respect to compassionate release in the U.S. Sentencing

2 Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."

3 U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[5]; *see also United States v. Gonzalez*,

4 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G.

5 § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement

6 was issued before Congress passed the FSA and authorized defendants to file compassionate

7 release motions).  However, the Ninth Circuit recently held "that the current version of U.S.S.G.

8 §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by

9 a defendant."  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the

10 Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A)

11 motions filed by a defendant."  *Id.*  The Ninth Circuit clarified that "[t]he Sentencing

12 Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for §

13 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *Id.* (citing *United States v.*

14 *Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

15    In so holding, the Ninth Circuit joined the five other circuits who have addressed this

16 issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

17 motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

18 defendant."  *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

19 ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

20

---

21  no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*
*Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.
22  com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
23  prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*
*COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-
24  manafort-released-from-prison-amid-covid-19-fears.

25  [5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
26  U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person
or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  However, as
27  the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under
18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in
28  U.S.S.G. § 1B1.13(2)."  United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021).

compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release.  District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts:  There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.      Administrative Exhaustion**

Defendant submitted his first administrative request to the warden at USP Atwater on May 19, 2020.  (*See* Ex. 3, Doc. No. 666-1 at 8–10.)  On June 8, 2020, the warden denied defendant's request.  (*Id.*)  Subsequently, on June 10, 2020, defendant submitted another administrative request for compassionate release to the warden, which was denied on July 6, 2020.  (*Id.* at 11.) The government is of the view that the exhaustion requirement's 30-day window applies even when a warden responds within 30 days to a request for compassionate release.  (Doc. No. 666 at 4.)  The court questions this view.  *See supra* note 3.  Nonetheless, because a failure to exhaust administrative remedies is viewed as an affirmative defense, which must be pled and proven, the government's concession with respect to exhaustion of administrative remedies is dispositive. Accordingly, below the court will address the merits of defendant's motion for compassionate release.

/////

/////

1    **B.      Extraordinary and Compelling Reasons**

2           "Extraordinary and compelling reasons" warranting compassionate release may exist

3    based on a defendant's medical conditions, age and other related factors, family circumstances, or

4    "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

5    reasons" was included in the policy statement at a time when only BOP could bring a

6    compassionate release motion, courts have agreed that it may be relied upon by defendants

7    bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

8    JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).  Moreover, in light

9    of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination,

10   this court is not restricted thereby and instead has "full discretion to define 'extraordinary and

11   compelling' without consulting the policy statement § 1B1.13."  *Jones*, 980 F.3d at 1111.

12          Thus, the medical condition of a defendant may warrant compassionate release where he

13   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

14   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

15   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

16   examples of terminal illnesses that may warrant a compassionate release "include metastatic

17   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

18   dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

19   condition may warrant compassionate release, including when:

20                  The defendant is

21                  (I)   suffering from a serious physical or medical condition,

22                  (II)  suffering from a serious functional or cognitive impairment, or

23                  (III) experiencing deteriorating physical or mental health because of
                        the aging process,

24
                        that substantially diminishes the ability of the defendant to provide
25                      self-care within the environment of a correctional facility and from
                        which he or she is not expected to recover.
26

27   *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

28   be sufficient to warrant compassionate release under ordinary circumstances, some courts have

concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[6]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Here, defendant Crisp argues that extraordinary and compelling reasons warranting compassionate release exist due to his medical condition and the risks posed to him by COVID-19.  Specifically, defendant argues that his former history of cigarette smoking places him at higher risk for becoming severely ill were he to contract COVID-19.  (Doc. No. 664 at 3, 5–6.) To qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care within" USP Atwater and the medical condition is one "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

At the time of defendant's sentencing, it was noted that "defendant is healthy and has no history of health problems."  (PSR at 13.)  Although defendant's alcohol consumption and denial

---

[6]  Because defendant Crisp is only 41 years old (*see* PSR at 3 (listing date of birth as August 27, 1979)), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

1    of using any controlled substances were noted, the PSR does not state that he was also a cigarette

2    or tobacco smoker.  (*Id.*)  Defendant's prison medical records provide an up-to-date picture of his

3    current condition.  These records indicate that defendant has a history of using tobacco products,

4    but there are no indications that defendant's history of smoking has caused him any existing or

5    current health problems.  (Doc. No. 670 at 9, 14 (sealed).)  Finally, defendant's brother and sister

6    each submitted two letters in support of defendant's motion for compassionate release, and both

7    letters state that defendant "was a cigarette smoker for 17 years and has not smoked since his

8    incarceration of March 31st, 2014."  (Doc. Nos. 664-8, 664-9.)

9         According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant

10   Crisp is in fact at higher risk of suffering a severe illness were he to contract COVID-19 because

11   he at one time smoked cigarettes.  *See Coronavirus Disease 2019 (COVID-19): People at*

12   *Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

13   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

14   conditions.html (last visited August 10, 2021) ("Being a current or former cigarette smoker can

15   make you more likely to get severely ill from COVID-19.").  However, some courts have

16   suggested that smoking by itself—especially with no supporting evidence that the history of

17   smoking has caused significant health ailments—may not be an appropriate ground justifying

18   compassionate release.  *See, e.g.*, *United States v. Green*, No. 17-20822, 2020 WL 6144556, at *5

19   (E.D. Mich. Oct. 20, 2020) ("[W]hile smoking or prior smoking may indicate an increased risk of

20   complications, especially if it caused another respiratory ailment, there are obvious policy reasons

21   why courts may hesitate to find that being a former, or current, smoker supports finding

22   extraordinary and compelling reasons for release.").

23        Based on the medical evidence before the court that defendant Crisp is a former smoker,

24   he has not shown that he is "suffering from a serious physical . . . condition . . . from which he . . .

25   is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Even if the court

26   determined that defendant's status as a former smoker *does* qualify as a serious medical

27   condition, defendant has also failed to demonstrate that his medical condition "substantially

28   diminishes [his] ability . . . to provide self-care" inside of USP Atwater.  *See id.*

10

Defendant asserts that "self-care for a person with his battery of health conditions means taking extra precautions to maintain hygiene, a sterile environment, and physical distance from others, especially if there is an outbreak of COVID-19 in the area," but he cannot take such measures while imprisoned.  (Doc. No. 664 at 11.)  While it is true that USP Atwater at one time suffered from a severe COVID-19 outbreak, with 345 inmates and 65 staff who tested positive for the virus but recovered, fortunately no inmates have died as a result of the virus.  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited August 17, 2021).[7] Most importantly, as of the date of this order there are currently no inmates or staff members who are reported as positive for the COVID-19 virus at that prison.[8]  *Id.*  Because it appears that

---

[7]  USP Atwater has a population of 987 inmates.  *USP Atwater*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/atw/ (last visited August 11, 2021).

[8]  While the undersigned does not necessarily accept these reported numbers at face value in light of the CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case. Moreover, although neither the defendant nor the government has addressed defendant Crisp's vaccine status, the court is aware that COVID-19 vaccines have been made available to inmates throughout the BOP's institutions.  Moreover,  according to the CDC, authorized vaccines "are highly effective at protecting vaccinated people against symptomatic and severe COVID-19." *COVID-19: Interim Public Health Recommendations for Fully Vaccinated People, Centers for Disease Control and Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated May 28, 2021) (emphasis added).  Medical evidence strongly suggests that fully vaccinated individuals are very well protected against becoming severely ill from COVID-19.  *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, *3–4 (D. Or. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, ___ F. Supp. 3d ___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue

11

1    current active cases among prisoners at USP Atwater have been reduced to zero, adding COVID-

2    19 to the equation thus does not tip the scales in favor of defendant's compassionate release at all.

3    Furthermore, nothing currently in the record before this court establishes that defendant Crisp is

4    at this time actually struggling to take care of himself.

5         There is no basis upon which the court could conclude that defendant is currently

6    "substantially diminishe[d]" in his ability to "provide self-care" at USP Atwater.  *See* U.S.S.G. §

7    1B1.13, cmt. n.1 (A)(ii).  Thus, defendant Crisp has failed to carry his burden.  *See Greenhut*,

8    2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that

9    establishes an entitlement to a sentence reduction.").  Therefore, in this case, the court does not

10   find extraordinary and compelling reasons justifying compassionate release pursuant to

11   § 3582(c)(1)(A).

12   **C.    Consistency With the § 3553(a) Factors**

13        Because the pending motion fails to establish extraordinary and compelling reasons

14   justifying compassionate release in this case, the court need not address whether any reduction in

15   defendant's sentence would be consistent with consideration of the sentencing factors set forth at

16   18 U.S.C. § 3553(a).  Nonetheless, even if a showing of extraordinary and compelling reasons for

17   compassionate release had been made, the undersigned is not persuaded that the requested

18   reduction of defendant's sentence would be consistent with consideration of those sentencing

19   factors.

20        As noted above, defendant Crisp was one of the principal architects of a massive and

21   egregious financial fraud scheme.  He defrauded mortgage lenders out of almost $30 million by

22

23   have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021
     WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected
24   and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and
     compelling reason to warrant compassionate release.").  Finally, as one judge of this court
25   emphasized recently, "[i]f defendants could buttress their motion for compassionate release by
     refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."
26   *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *4 (E.D. Cal. Mar 24,
     2021).  Thus, whether defendant Crisp is vaccinated or not, the availability of the vaccine to him
27   in prison weighs against a finding of extraordinary and compelling reasons supporting his
     compassionate release.
28

                                                   12

1   artificially inflating the prices of homes using straw companies to engage in a series of

2   "frequent[]" sales—all of which occurred during a time period leading up to the subprime

3   mortgage crisis.[9]   (*See* PSR at 5–9; Doc. No. 433 at 5 (ordering $28,210,420.48 in restitution).)

4   Moreover, defendant Crisp was found to be a leader or organizer of that criminal fraud conspiracy

5   which involved multiple participants, including family members of the leaders.  (PSR at 8.)  In

6   opposing defendant's compassionate release, the government highlights the enormous financial

7   loss suffered as a result of defendant's fraudulent criminal conduct.  (Doc. No. 666 at 12.)  It is

8   apparent in light of the egregious nature of defendant's offense of conviction that consideration of

9   the nature and circumstances of the offense, the need for the sentence imposed to reflect the

10  seriousness of the offense, and to promote respect for the law while providing just punishment

11  and affording adequate deterrence are all factors that weigh against the granting of compassionate

12  release in this case.

13      Moreover, the court notes that defendant Crisp's co-defendant and partner in this scheme

14  to defraud, Carlyle Cole, also pleaded guilty to Count One of the Indictment and was, like

15  defendant Crisp, sentenced to a 211-month term of imprisonment.  (Doc. No. 367.)  While the

16  other co-defendants in this case received more lenient sentences, those defendants for the most

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27

28

---

[9]  John V. Duca, *Subprime Mortgage Crisis*, FEDERAL RESERVE HISTORY (Nov. 22, 2013), https://www.federalreservehistory.org/essays/subprime_mortgage_crisis.

1   part played far lesser roles in this massive fraud.[10]

2         Finally, "[t]he length of the sentence remaining is an additional factor to consider in any

3   compassionate release analysis,' with a longer remaining sentence weighing against granting any

4   such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6

5   (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL

6   2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-

7   1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate

8   release, noting, "the Court finds it significant that defendants have served far less than half of

9   their sentences"). Here, with good time credits taken into account, defendant Crisp's anticipated

10  release date from prison is in February 2029. (Doc. No. 666-1 at 4.) Were his motion for

11  compassionate release to now be granted, he would have served only approximately 89 months of

12  his 211-month sentence. In the undersigned's view, such a sentence would create sentencing

13  disparity concerns given the sentences imposed on defendants who were far less responsible for

14  the fraud and that co-defendant Cole received the same 211-month sentence. In addition, such a

15  reduction in defendant Crisp's below-guideline range of 211 months would not adequately reflect

16  the seriousness of his offense of conviction, promote respect for the law, provide just punishment,

17  or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-

---

18   [10]  Robinson Dinh Nguyen pleaded guilty to Count 1 and was sentenced to a term of
19   imprisonment of 27 months. (Doc. Nos. 180, 188.) Caleb Lee Cole pleaded guilty to Count 7
     and was sentenced to a term of imprisonment of five months, with his father, defendant Carlyle
20   Cole, urging the court for leniency because he was responsible for involving his son in his fraud.
     (Doc. Nos. 366, 382, 387.) Jayson Peter Costa pleaded guilty to Count 1 and was sentenced to a
21   term of imprisonment of 78 months. (Doc. No. 406.) Jennifer Anne Crisp pleaded guilty to
     Counts 21 and 43 (mail and wire fraud) and was sentenced to a term of probation of five years for
22   each count to run concurrently. (Doc. Nos. 431, 540.) Michael Angelo Munoz pleaded guilty to
     Counts 26 and 28 (both mail fraud) and was sentenced to a term of imprisonment of 24 months
23   for each count to run concurrently. (Doc. No. 460.) Jeriel Salinas pleaded guilty to Count 1 and
     was sentenced to a term of imprisonment of 19 months. (Doc. No. 471.) Sneha Ramesh
24   Mohammadi pleaded guilty to Count 1 and was sentenced to a term of imprisonment of 18
25   months. (Doc. No. 539.) Julie Farmer was convicted following a jury trial on Counts 1
     (conspiracy), 2 (mail fraud), 3 (mail fraud), 37 (wire fraud), and 38 (wire fraud) and was
26   sentenced to a term of imprisonment of 36 months on each count to run concurrently. (Doc. No.
27   528 at 1–2.) While defendant Farmer was found to be part of the core of the Crisp and Cole
     operation, the sentencing judge also concluded that she was far less sophisticated than the two
28   principals and had been influenced, particularly by defendant Crisp. (Doc. No. 526.)

00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993, at *5; 18 U.S.C. § 3553(a).

On balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with consideration of the § 3553(a) sentencing factors.

## CONCLUSION

For the reasons explained above, the court concludes that defendant Crisp has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  Moreover, the court finds that the granting of release at this time is not consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).   Accordingly, defendant's motion for compassionate release (Doc. No. 664) is denied.

IT IS SO ORDERED.

Dated:   **August 17, 2021**                                      _____

UNITED STATES DISTRICT JUDGE